IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ZAHIRA ALVAREZ,<br><br>Plaintiff,<br><br>v.<br><br>AMGEN MANUFACTURING LIMITED; ET AL.<br><br>Defendants. | CIV. NO.: 16-2205 (PAD/SCC) |

**REPORT AND RECOMMENDATION**

The presiding judge referred defendants' Motion to Dismiss and Compel Arbitration to the undersigned for a report and recommendation. Because I find that the parties entered into a valid arbitration agreement, which encompasses the claims asserted in the Complaint, I recommend that the Motion be granted.

**I. Background**

Plaintiff Zahira Alvarez filed suit against her employer,

Amgen Manufacturing, Limited, and two company officials, Jose Melendez, and Rolando Aguila, alleging sex-based discrimination pursuant to Title VII of the Civil Rights Act. Docket No. 1. Alvarez also seeks redress under several Puerto Rico anti-discrimination statutes, and the general tort statute, Article 1802 of the Puerto Rico Civil Code.

Specifically, Alvarez avers that her male supervisors carried out a campaign to belittle her and damage her reputation because of her gender. She further claims that she was treated less favorably than her male colleagues were.

Defendants moved to dismiss the complaint and enforce an Arbitration Agreement signed by the parties. Docket No. 13. Plaintiff opposed, and defendants replied. Docket Nos. 20 and 24.

**II. Analysis**

**A. The Arbitration Agreement**

Alvarez began working in Amgen as a Manufacturing Supervisor on March of 2006. In March 24, 2006, she signed a document titled "Mutual Agreement to Arbitrate Claims". *See*

Docket No. 13-1. The existence and contents of the 2006 Agreement are undisputed. *Id*. The validity of Ms. Alvarez' consent has not been challenged either.

The 2006 Agreement states that Amgen and Alvarez consent to "the resolution by final and binding arbitration of all claims and controversies…whether or not arising out of [Alvarez'] employment (or its termination), that the Company may have against [Alvarez] or that [Alvarez] may have against the Company or against its current or former officers, directors, employees, or agents." *See* Docket No. 13-1 at ¶ 2.1. The Agreement includes a non-exhaustive list of covered claims, which includes "claims for harassment, retaliation or discrimination (including, but not limited to, race, color, *sex*, religion, natural origin, age,….)" (emphasis supplied). *Id*.

Because plaintiff claims that Amgen and its officers incurred in violations to anti-discrimination statutes in her workplace, the case seems to fall squarely within the ambit of the 2006 Agreement. Alvarez, however, challenges this seemingly straightforward conclusion. She avers that in 2014,

she signed a new agreement with Amgen whereby she opted out of the Arbitration Clause. Alvarez further argues that the new agreement effectively constituted a novation, thus extinguishing the 2006 mutual agreement to arbitrate, and liberating her from mandatory arbitration.

According to Alvarez, "she was caught by surprise" upon seeing the 2006 Agreement because she "distinctively remembers signing a document in 2014, in which she opted out of the 2006 Arbitration Agreement." *See* Docket No. 20 at pg. 2. Though, admittedly, she did not have a copy of the 2014 Agreement in her possession, Alvarez concluded that Amgen must have kept a written record of her opt-out.

Amgen's reply disproves Alvarez' recollection. The company explained that on March 17, 2014, it offered its employees, plaintiff included, the opportunity to execute a new Arbitration Agreement. *See* Docket No. 24. Employees could either sign, or opt-out, of the 2014 Agreement. *Id*. In a memorandum to employees titled "Notice of New Arbitration Agreement and Opt-Out Instructions", Amgen stated as

follows: ""[i]f you previously signed an arbitration agreement with Amgen, submitting the Opt-Out Form will not cancel that prior agreement or affect your obligation Amgen's obligation to arbitrate disputes pursuant to it." *See* Docket No. 24-1. In short, by signing the opt-out form in the 2014 Agreement, an employee would not be attached to the 2014 Agreement, but would still be bound by the 2006 Arbitration Agreement.

Amgen attached a copy of the March 22, 2014 Opt-Out Form that Alvarez signed. *See* Docket No. 24-1. The document reads, in pertinent part:

> I have received a copy of the Mutual Agreement to Arbitrate Claims sent with this opt-out form and choose not to enter into it. I understand that submitting this form will not cancel any arbitration agreement that I have previously signed with Amgen or affect my obligation to arbitrate disputes under the terms of any existing agreement.

*See* Arbitration Agreement Opt-Out Form, Docket No. 24-1.

Amgen also included an email sent to Alvarez where Amgen acknowledged that it received her Opt-Out Form for

the 2014 Agreement. The email contains language that is similar to the portion of the Opt-Out form cited above, and reads as follows:

> Please remember that if you previously signed an arbitration agreement with Amgen, submitting the Opt-Out Form does not cancel that prior agreement or affect your obligation and Amgen's obligation to arbitrate disputes pursuant to it. Submitting the Opt-Out form only prevents you and Amgen from being bound to the new arbitration agreement.

*See* Docket No. 24-1, Exhibit C.

Having reviewed the referenced documents, I conclude that the plaintiff knowingly opted out of the 2014 Arbitration Agreement, but is bound by the terms of the 2006 Agreement. In order for the 2014 Agreement to constitute an extinctive novation that extinguished all obligations under the 2006 one, the parties must have expressly stated their intention to create a new agreement. See *Nieves Domenech v. Dymax Corp.*, 952 F.Supp. 57, 62 (D.P.R. 1996)(citing *Constructora Bauzá, Inc. v. Luis Garcia López*, 129 D.P.R. 579, 598 (1981)("An extinctive novation's occurrence is never presumed.").The second

manner in which an extinctive novation may operate is through the creation of a new agreement that is incompatible with the original one. *Id*. at 62.

The 2014 Agreement gave employees the option to enter into new conditions of arbitration altogether, thus operating as an extinctive novation of the 2006 arbitration terms. However, the underlying obligation to arbitrate was immutable. Ms. Alvarez, however, misconstrued the meaning of the 2014 Opt-Out form, and thought that by filling it out, she was effectively breaking free from any obligation to arbitrate. Her confusion does not discharge her from the commitment to fulfill the agreement she voluntarily signed.

Furthermore, there is no evidence that Ms. Alvarez's consent was invalid or that Amgen elicited it through improper means. On the contrary, Amgen made clear to its employees that signing 2014 Opt-Out Form did not discharge them from the prior Agreement to Arbitrate. Taking all these facts together, the Court concludes that Ms. Alvarez consciously and willingly consented to the 2006 Agreement

and that the 2014 Opt-Out does not constitute a novation that discharges her duty to arbitrate.

## B. Enforcement of Arbitration Clause

The Federal Arbitration Act ("FAA") promotes a "liberal policy favoring arbitration." *See* 9 U.S.C. § 2, and *Constructora Andrade Gutierrez, S.A. v. American Intern. Ins. Co. of Puerto Rico*, 467 F.3d 38, 48 (1st Cir. 2006). Pursuant to Section 2 of the FAA, "an agreement in writing to submit to arbitration an existing controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If an agreement satisfies these requirements, the FAA empowers a court to stay a judicial proceeding filed by a party resisting arbitration. *Escobar-Noble v. Luxury Hotels Intern. of Puerto Rico, Inc.*, 680 F.3d 118, 121 (1st Cir. 2012).

The court must only compel arbitration after it is persuaded that the parties entered into a "validly formed and legally enforceable agreement covering the underlying claims." *Escobar-Noble*, 680 F.3d at 122 (*citing Granite Rock Co.*

*v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 300 (2010) and *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir.2011)). To undertake the analysis, the Court must apply Puerto Rico contract law. *Garrison v. Palmas del Mar Homeowners Ass'n*, 538 F.Supp.2d 468, 475 (D.P.R. 2008).

Neither party has raised a challenge to the validity of the agreement, and even if they had, the record supports its legality. The only issue remaining, then, is whether the agreement covers the underlying claims. We find that it does. This suit alleges sex-based discrimination, which the 2006 Agreement specifically includes in the list of covered claims. Therefore, this case fulfills all the requirements for compelling arbitration.

### III. Conclusion

In tune with the Arbitration Act's mandate for liberality and expeditiousness in securing arbitration,[1] we recommend that the Motion to Dismiss and Compel Arbitration, Docket

---

[1] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

No. 13, be granted and that the Court: (1) compels the plaintiff to arbitrate her claims against defendants and; (2) stay the action pending the completion of arbitration.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 25th day of August, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE